UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ANDREA M. JACOBS,                    :
                                     :CIVIL ACTION NO. 3:17-cv-271
            Plaintiff,               :
                                     :(JUDGE CONABOY)
            v.                       :
                                     :
NANCY A. BERRYHILL,                  :
Acting Commissioner of               :
Social Security,                     :
                                     :
            Defendant.               :
                                     :

_____

**MEMORANDUM**

Pending before the Court is Plaintiff's appeal from the Commissioner's denial of Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and Supplemental Security Income ("SSI") under Title XVI. (Doc. 1.) Plaintiff filed applications for benefits on June 3, 2013, alleging a disability onset date of March 19, 2013, which she later amended to January 12, 2012. (R. 97.) After she appealed the initial denial of the claims, a hearing was held on May 1, 2015, and Administrative Law Judge ("ALJ") Patrick S. Cutter issued his Decision on May 28, 2015, concluding that Plaintiff had not been under a disability during the relevant time period. (R. 97, 106-07.) Plaintiff requested review of the ALJ's decision which the Appeals Council denied on October 13, 2016. (R. 1-7, 91-93.) In doing so, the ALJ's decision became the decision of the Acting Commissioner.[1]

_____

[1] The Notice of Appeals Council Action stated that additional evidence was considered and did not provide a basis for changing

(R. 1.)

Plaintiff filed this action on February 14, 2017. (Doc. 1.) She asserts in her supporting brief that the Acting Commissioner's determination is error for the following reasons: 1) the ALJ failed to accord proper weight to Plaintiff's testimony regarding the intensity, persistence, and limiting effects of her symptoms, particularly the constant nature of her pain and her need to often elevate her feet; 2) the ALJ failed to accord proper weight to Plaintiff's treating providers; 3) the ALJ failed to consider post-hearing medical evidence from Umar Aydogan, M.D., dated May 12, 2015; and 4) the Appeals Council failed to consider post-hearing medical evidence including Dr. Aydogan's May 12, 2015, evaluation and subsequent treatment notes. (Doc. 8-1 at 3.) After careful review of the record and the parties' filings, the Court concludes this appeal is properly denied.

## I. Background

Plaintiff was born on August 8, 1984, and was twenty-seven years old on the alleged disability onset date. (R. 105.) She has a high school education and past relevant work as a receptionist,

_____

the ALJ's decision. (R. 2.) The Notice specifically identified evidence dated May 8, 2015, through May 11, 2015, from Milton S. Hershey Medical Center which is a copy of Exhibit 12F (R. 663-68) and evidence dated from June 30, 2015, through October 8, 2015. (R. 2.) The Notice explained that the June 30th through October 8th evidence was new information relevant to a later time in that the ALJ issued his decision on May 28, 2015, and if the claimant wanted consideration of whether she was disabled after May 28, 2015, she needed to apply again. (*Id.*)

dispatcher, waiter, and cashier II.  (*Id.*)

## A.    *Medical Evidence*

As it is Plaintiff's burden to prove disability, the Court focuses on the evidence of record cited by Plaintiff in support of her arguments.

Plaintiff avers that her testimony and medical records show that she was diagnosed with toxic mold exposure in 2010.  (Doc. 8-1 at 2.)  As a result, she was treated with "massive doses of an oral steroid, Prednisone" which "has caused crippling dysfunction to her bone structure."  (*Id.*)

In support of her assertion, Plaintiff cites four record pages which were before the ALJ--R. 527, 529, 533, 545.  (Doc. 8-1 at 2; *see also* Doc. 10 at 2.)  Chronologically, the first of these is from Orthopedic Institute of Pennsylvania where Plaintiff was treated on May 20, 2013, by Kathryn Mueller, PA-C, for pain in her left ankle.  (R. 529.)  Plaintiff reported that she had a history of avascular necrosis secondary to long term steroid use because of a previous medical condition.  (*Id.*)  She reported that she had been having problems with her ankle and felt like she had broken it over the weekend and she was having pain and swelling in that area.  (*Id.*)  Ms. Mueller noted that Plaintiff had bilateral total knee replacements related to the avascular necrosis.  (*Id.*)  Physical examination showed that Plaintiff had pain deep in the ankle joint in the mid section, she had no medial or lateral tenderness, and

the Achilles was intact.  (*Id.*)  X-rays showed an abnormality in
the dome of the talus and some flattening as well as what appeared
to be some avascular or osteonecrosis.  (*Id.*)  Ms. Mueller
determined that MRI was advisable to better delineate the problem.
(*Id.*)  She provided Vicodin for what was described as "a fair
amount of especially night pain" and she was given a "short Vectra
boot."   (*Id.*)  Ms. Mueller noted that the plan of treatment was
reviewed by Dr. Frankeny.  (*Id.*)

MRI of the left ankle was done at Orthopedic Institute of
Pennsylvania ("OIP") on May 23, 2013. (R. 533.)  The radiology
report indicated that there was a small ankle joint effusion,
evidence of prior avascular necrosis involving the medial one half
of the talar dome, a very small focus of T2 prolongation along the
anterior edge of the focus of AVN, advanced chondrosis overlying
the focus of AVN in the talar dome, a small os trigonum, and a
small subchondral cyst in the anterior aspect of the calcaneus
flanking the calcaneal cuboid joint.  (*Id.*)

On June 10, 2013, Plaintiff saw Michael Werner, M.D., of the
Orthopedic Institute who noted that Plaintiff had severe AVN to her
left talus.  (R. 527.)  He recorded that Plaintiff had a history of
severe AVN to bilateral knees necessitating a total knee
replacement for steroid induced osteonecrosis from previous
aspergillosis lung infection but she was off steroids at the time.
(*Id.*)  Dr. Werner noted that the pain in Plaintiff's ankles was

4

worse left than right and it had been going on for years but had been worse the previous several months. (*Id.*) She rated the pain as 9/10 over the preceding two years with sharp pain around her ankle that radiated to the anterior arch. (*Id.*) Dr. Werner's physical examination showed that there was good range of motion and strength to the ankle, noting that "[i]t appears the more she is on it the deep ache happens." (*Id.*) He noted that the ligaments were stable, external rotation test was negative, there was no synovitis, pulses and sensation were intact, and she had similar problems in the right ankle but much milder. (*Id.*) Dr. Werner diagnosed AVN of the left ankle. (*Id.*) His proposed plan began with the statement "[n]o easy answers here." (*Id.*) He believed that fusion was a good option but Plaintiff was adamantly against it. (*Id.*) Dr. Werner explained that Plaintiff was not a candidate for a total ankle replacement and she was willing to proceed with osteocartilaginous allograft but he would first send her to an endocrinologist for further evaluation. (*Id.*) He commented that Plaintiff had not worked in two years and the goal of surgery "apparently is not to get her back to work but to get her more comfortable." (*Id.*)

Dr. Werner performed surgery on July 12, 2013. (R. 545.) Following the "[l]eft medial malleolar osteotomy, ankle arthrotomy, synovectomy, curettage and bone grafting with allograft osteocartilaginous plugs talus, 11 mm and 7 mm plugs," Dr. Werner

noted there were no complications and Plaintiff went to post-op in stable condition. (*Id.*)

Additional medical evidence central to the Court's analysis will be set out in the relevant discussion below.

## B.    *Testimony*

Plaintiff points to her May 1, 2015, hearing testimony that she continued to have severe pain and discomfort in her knees and ankles (most particularly in her left ankle), her pain caused marked restrictions in her external activities as well as problems with prolonged sitting, walking, or standing, and the only relief she experienced was when she was lying down. (Doc. 8-1 at 2 (citing R. 118, 119, 129).)

## C.    *ALJ Decision*

In his May 28, 2015, Decision, ALJ Cutter determined that Plaintiff had the severe impairments of left ankle arthritis, status post medial malleolus osteotomy and costocartilage plugs, right ankle pain, status post bilateral knee replacements, and a history of asthma and bronchopulmonary aspergillosis. (R. 99.) He concluded that her impairments, considered alone and in combination, did not meet or equal a listed impairment. (R. 100.)

ALJ Cutter found that Plaintiff had the residual functional capacity ("RFC") for light work with limitations: she could stand occasionally and walk occasionally; she could sit frequently; she was not able to climb, kneel, crouch, or crawl; she was able to

balance and stoop occasionally; ans she was unable to tolerate any exposure to dust, fumes, gases, temperature extremes, or humidity. (R. 100.)  With this RFC, he concluded Plaintiff could not do her past relevant work but she was able to perform jobs which were available in significant numbers in the national economy.  (R. 105-06.)  Therefore, ALJ Cutter found that Plaintiff had not been under a disability as defined in the Social Security Act from January 10, 2012, through the date of the decision, May 28, 2015.  (R. 106-07.)

Other relevant portions of the ALJ's Decision will be referenced in the Discussion section of this Memorandum.

## II. Disability Determination Process

The Commissioner is required to use a five-step analysis to determine whether a claimant is disabled.[2]  It is necessary for the

---

[2]  "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  The Act further provides that an individual is disabled

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

Commissioner to ascertain: 1) whether the applicant is engaged in a substantial activity; 2) whether the applicant is severely impaired; 3) whether the impairment matches or is equal to the requirements of one of the listed impairments, whereby he qualifies for benefits without further inquiry; 4) whether the claimant can perform his past work; 5) whether the claimant's impairment together with his age, education, and past work experiences preclude him from doing any other sort of work. 20 C.F.R. §§ 404.1520(b)-(g), 416.920(b)-(g); *see Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 888-89 (1990).

If the impairments do not meet or equal a listed impairment, the ALJ makes a finding about the claimant's residual functional capacity based on all the relevant medical evidence and other evidence in the case record. 20 C.F.R. § 404.1520(e); 416.920(e). The residual functional capacity assessment is then used at the fourth and fifth steps of the evaluation process. *Id.*

The disability determination involves shifting burdens of proof. The initial burden rests with the claimant to demonstrate that he or she is unable to engage in his or her past relevant work. If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. *Mason v. Shalala*, 993 F.2d 1058, 1064 (3d Cir. 1993).

As set out above, the instant decision was decided at step

five of the sequential evaluation process when the ALJ found that Plaintiff could perform jobs that existed in significant numbers in the national economy.  (R. 105-06.)

### III. **Standard of Review**

This Court's review of the Commissioner's final decision is limited to determining whether there is substantial evidence to support the Commissioner's decision.  42 U.S.C. § 405(g); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).  Substantial evidence means "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).  The Third Circuit Court of Appeals further explained this standard in *Kent v. Schweiker*, 710 F.2d 110 (3d Cir. 1983).

> This oft-cited language is not . . . a talismanic or self-executing formula for adjudication; rather, our decisions make clear that determination of the existence *vel non* of substantial evidence is *not* merely a quantitative exercise.  A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence.  Nor is evidence substantial if it is overwhelmed by other evidence-- particularly certain types of evidence (e.g., that offered by treating physicians)--or if it really constitutes not evidence but mere conclusion.  *See* [*Cotter*, 642 F.2d] at 706 ("'Substantial evidence' can only be considered as supporting evidence in relationship to all the other evidence in the record.") (footnote omitted).  The search for

> substantial evidence is thus a qualitative
> exercise without which our review of social
> security disability cases ceases to be merely
> deferential and becomes instead a sham.

*Kent*, 710 F.2d at 114.

This guidance makes clear it is necessary for the ALJ to analyze all probative evidence and set out the reasons for his decision. *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119-20 (3d Cir. 2000) (citations omitted). If he has not done so and has not sufficiently explained the weight given to all probative exhibits, "to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Dobrowolsky v. Califano*, 606 F.2d 403, 406 (3d Cir. 1979). In *Cotter*, the Circuit Court clarified that the ALJ must not only state the evidence considered which supports the result but also indicate what evidence was rejected: "Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter*, 642 F.2d at 706-07. However, the ALJ need not undertake an exhaustive discussion of all the evidence. *See*, *e.g.*, *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).

A reviewing court may not set aside the Commissioner's final decision if it is supported by substantial evidence, even if the

court would have reached different factual conclusions. *Hartranft*, 181 F.3d at 360 (*citing Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986); 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . ."). "However, even if the Secretary's factual findings are supported by substantial evidence, [a court] may review whether the Secretary, in making his findings, applied the correct legal standards to the facts presented." *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983) (internal quotation omitted). Where a claimed error would not affect the outcome of a case, remand is not required. *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005). Finally, an ALJ's decision can only be reviewed by a court based on the evidence that was before the ALJ at the time he or she made his or her decision. *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001).

## **IV. Discussion**

Plaintiff asserts that the Acting Commissioner's determination is error for the following reasons: 1) the ALJ failed to accord proper weight to Plaintiff's testimony regarding the intensity, persistence, and limiting effects of her symptoms, particularly the constant nature of her pain and her need to often elevate her feet; 2) the ALJ failed to accord proper weight to Plaintiff's treating providers; 3) the ALJ failed to consider post-hearing medical evidence from Umar Aydogan, M.D., dated May 12, 2015; and 4) the

11

Appeals Council failed to consider post-hearing medical evidence including Dr. Aydogan's May 12, 2015, evaluation and subsequent treatment notes.  (Doc. 8-1 at 3.)

## A.  *Credibility*

Plaintiff's assertion that the ALJ failed to accord proper weight to her testimony regarding the intensity, persistence, and limiting effects of her symptoms, particularly the constant nature of her pain and her need to often elevate her feet is a claim that ALJ Cutter erred in his credibility determination.  (See Doc. 8-1 at 4.)

The The Third Circuit Court of Appeals has made clear that a reviewing court is to defer to the ALJ's assessment of credibility. *See*, *e.g.*, *Zirnsak v. Colvin*, 777 F.3d 607, 612 (3d Cir. 2014). *Zirsak* cited *Diaz v. Comm'r*, 577 F.3d 500, 506 (3d Cir. 2009), for the proposition that "[i]n determining whether there is substantial evidence to support and administrative law judge's decision, we owe deference to his evaluation of the evidence [and] assessment of the credibility of witnesses."  777 F.3d at 612.  *Zirsak* also made clear that "the ALJ must specifically identify and explain what evidence he found not credible and why he found it not credible." *Id.* (citing *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994)).

Here ALJ Cutter provided specific reasons for finding Plaintiff not fully credible.  (R. 104.)  Plaintiff points to only one instance in which the ALJ mischaracterized her testimony: he

stated that "[s]he testified that she elevates her leg while
sleeping and for thirty minutes during the day" where she said she
had to prop her legs up throughout the day. (Doc. 8-1 at 4 (citing
R. 101, 129).) At the hearing, Plaintiff testified that "every
night while I'm sleeping I have it elevated. And I, during the
day, will often lay down and prop it up for at least a half-hour."
(R. 118.) She later said she needed to prop her legs up
"throughout the day." (R. 129.) Although the ALJ's statement
regarding elevation of Plaintiff's left leg is not accurate
reflection of her testimony, this one instance of
mischaracterization does not show harmful error as is Plaintiff's
burden. The statement that "a fair reading of the record will
conclusorily show that Ms. Jacob's testimony was entirely
consistent with the medical records," (Doc. 8-1 at 5) is wholly
inadequate to satisfy her burden of showing error on the basis
alleged. Therefore, the Court concludes Plaintiff has not shown
that this claimed error is cause for remand.

## B.    *Treating Provider Evidence*

Plaintiff next asserts the ALJ erred by failing
to accord proper weight to her treating providers. (Doc. 8-1 at
5.) Although Plaintiff states that "throughout the medical
records, [her] treating physicians continually note she received
little or no relief from her 2013 ankle surgery, that she is in
constant pain, and that her right ankle also bothers her on a day

13

to day basis" (*id.*), she cites only her own testimony in support of the assertion (*id.* (citing R. 124, 125, 126)), and ALJ Cutter's inclusion in his summary that document "her complaints of pain, worsening symptoms, recommendations to see specialists, and an increased number of recommendations for testing" (*id.* (citing R. 101, 102, 103)). Plaintiff conclusorily states that the ALJ committed reversible error by giving limited weight to Plaintiff's treating providers, she does not cite a single opinion from a treating provider nor does she cite specific records which were improperly given limited weight. (*See* Doc. 8-1 at 5-6.) Therefore, once again, Plaintiff has not come close to meeting her burden of showing error on the basis claimed.

## C.    *Post-Hearing Medical Evidence*

Plaintiff's third claimed error is that the ALJ did not consider evidence from Umar Aydogan, M.D., dated May 12, 2015. (Doc. 8-1 at 6.) Defendant responds that Plaintiff's failure to submit evidence in not indicative of the ALJ's duty to develop the record. (Doc. 9 at 15.) The Court concludes Plaintiff has not shown that the claimed error is cause for remand.

Plaintiff asserts that the ALJ was informed at the hearing on May 1, 2015, that the May 12th evaluation was to take place. (Doc. 8-1 at 6.) While it is true that Plaintiff mentioned at the hearing that she had an orthopedic evaluation scheduled for May 8th, she made the statement in the context of a discussion of whether

anyone was monitoring whether she was continuing to lose bone density. (*See* R. 126-27.) She confirmed that the orthopedist to whom she had been referred was going to do diagnostic tests to see if there was "more loss of bone density." (R. 127.) At the hearing, ALJ Cutter specifically asked Plaintiff's attorney "Is there anything outstanding that we need to add after the hearing is over" and the attorney responded that there was only an April 20th office note. (R. 115.) ALJ Cutter confirmed that he had received that note as well as other recent submissions. (R. 115-16.) ALJ Cutter also asked counsel whether there were any other issues he wanted to bring to the ALJ's attention and counsel replied there were no other issues. (R. 116.) When asked at the end of the hearing whether there were any closing comments, counsel asked only that the ALJ consider an amended onset date. (R. 137-38.) The List of Exhibits attached to the May 28, 2015, Decision shows that the May 8th office notes were not received by ALJ Cutter before he issued his Decision. (*See* R. 108-11.)

Because an ALJ's decision can only be reviewed by a court based on the evidence that was before the ALJ at the time he made his decision, error can only be based on what was before the ALJ at that time. *Matthews*, 239 F.3d at 593. Thus, error in this situation depends on whether ALJ Cutter committed reversible error by not pursuing the record from a scheduled orthopedic bone density evaluation which was mentioned in passing at the hearing.

Though an ALJ has a duty to develop the record, in the circumstances presented here no evidence suggests that the ALJ ran afoul of that duty.  As noted by Defendants, "[t]he Act and controlling regulations make clear that while an ALJ has a duty to develop the record, the burden is always on Plaintiff to present evidence of her disability."  (Doc. 9 at 16-17 (citing 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. §§ 404.1512(a), 416.912(a)).)  It is the plaintiff's responsibility to  to provide medical and other evidence upon which the commissioner can base a decision.  *See*, *e.g.*, *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).  The ALJ has the duty to develop the record sufficiently to make a determination of disability, *Ventura v. Shalala*, 55 F.3d 900 (3d Cir. 1995); 20 C.F.R. § 416.912(d), but the duty does not come into play where the record contains adequate evidence to make a determination.  While an ALJ must undertake this duty "with special care" in situations where the claimant is unrepresented, *Dobrowoslky*, 743 F.3d at 1008, district courts have concluded that "[w]hen an applicant for social security benefits is represented by counsel the administrative law judge is entitled to assume that the applicant is making his strongest case for benefits."  *Yoder v. Colvin,* No. 13-107, 2001 WL 2770045, *3 (W.D. Pa. June 18, 2014) (citing *Lofland v. Astrue*, No. 12-624, 2013 WL 3929795, at *17 (D. Del. July 24, 2013)).

Here Plaintiff has been represented by counsel at all pertinent times.  Counsel did not seek to keep the record open at

16

the hearing and specifically confirmed that, with receipt of the April 20th office note and other submissions, there was "nothing outstanding that we need to add after the hearing is over" (R. 115). Plaintiff cannot now blame the ALJ for not pursuing records which were not in existence at the time of the hearing and he was not alerted would be forthcoming. Therefore, Plaintiff has not shown that claimed errors based on the ALJ's failure to consider May 2015, notes from Dr. Aydogan and failure to develop the record are cause for remand.

## D. Appeals Council Error

Finally, Plaintiff contends the Appeals Council erred in failing to consider post-hearing medical evidence including Dr. Aydogan's May 12, 2015, evaluation and subsequent treatment notes. (Doc. 8-1 at 7-8.) Defendant responds that the Appeals Council's decision is not reviewable in that 42 U.S.C. § 405(g) only permits review of final agency decisions and, because the Appeals Council denied Plaintiff's request for review, the ALJ's decision became the final agency decision subject to review. (Doc. 9 at 19 (citing *Califano v. Sanders*, 430 U.S. 99, 108 (1977); 20 C.F.R. §§ 404.900(a)(4)-(5),.955, .981; 416.1400(a)(4)-(5), .1455, .1481; *Sims v. Apfel*, 530 U.S. 103, 107 (2000)). Defendant also responds that Plaintiff cannot rely on the additional evidence submitted to the Appeals Council because the evidence does not meet necessary requirements. (Doc. 9 at 21.) In his reply brief, Plaintiff does

not dispute that the Appeals' Council's decision is not reviewable in the circumstances presented here but maintains that the Court may remand for consideration of new and material evidence. (Doc. 10 at 4-5.) The Court concludes Plaintiff has not satisfied her burden of showing that the claimed error is cause for remand.

For remand to be based on evidence that was not before the ALJ, the plaintiff must show that the evidence was new and material, and there was just cause for not submitting it to the ALJ. 42 U.S.C. § 405(g); *Matthews*, 239 F.3d at 593. As reviewed in *Szubak v. Sec'y of Health and Human Services*, 745 F.2d 831, 833 (3d Cir. 1984), to support a "new evidence" remand, the "new" element means that the evidence must not merely be cumulative of what is already in the record; and the "material" element means that it must be relevant and probative and there is "a reasonable possibility that the new evidence would have changed the outcome of the Secretary's determination." *Id.*; *see also Newhouse v. Heckler*, 753 F.2d 283, 287 (3d Cir. 1985). *Szubak* also pointed out the "implicit materiality requirement" that the new evidence relate to the time period for which benefits were denied and "that it not concern evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition." 745 F.2d at 833 (citation omitted).

Applying this standard, records from August and September 2015 referenced by Plaintiff (Doc. 8-1 at 8; Doc. 10 at 4) are not

material because they are outside the relevant time period which ended on the date of the ALJ's decision, May 28, 2015. Regarding the May 2015 evaluation, Plaintiff states that Dr. Aydogan noted the severity of her condition and provided "affirmative medical corroboration of [her] stated limitations and restrictions." (Doc. 8-1 at 7.) She provides the following excerpt from the record:

> The patient is a 30-year-old female. She has a history of osteonecrosis in multiple joints, secondary to long-term steroid use for allergic bronchopulmonary aspergillosis. She has had bilateral knee replacements by Dr. Frankeny with OIP. She has also had surgery already on her left ankle by Dr. Warner a[t] OIP of the osteonecrosis. She is here today because over the last 6 months or so, she has had progressive and increasing pain in that left ankle. She says that typically she wears a CAM boot for support. She has had a couple of episodes over the last few months, secondary to increasing pain of locking and buckling as well. She feels like she is losing some of the dorsiflexion in her foot and has had some weakness, which she is not sure if it is related to strength or pain related. She says she was recently seen over at Holy Spirit Hospital in early April, had some x-rays taken and was told at that time that she had some significant progression of her osteonecrosis in her ankle and needed to be seen by orthopedics and that is the reason she is hear [sic] today. She denied any numbness or tingling. She denies any injuries to that ankle. She has not had any significant swelling. Pain is there all of the time, but worse with standing, stairs, any kind of weight bearing and uneven surfaces are significantly bad for her. It does improve, but does not go away entirely when she is lying down.

(Doc. 8-1 at 7-8 (quoting R. 674).)[3]  As noted in her reply brief

(Doc. 10 at 4), Dr. Aydogan diagnosed left talar necrosis with

breakdown and collapse as supported by x-rays reviewed at the May

8, 2015, office visit.  (*See* R. 664.)

The citation from Dr. Aydogan's office note is Plaintiff's

subjective history found in the note.  (*See* R. 663.)  It does not

meet the new and material standard, particularly in that this

history was provided to Dr. Aydogan just one week after Plaintiff

testified at the ALJ hearing.  (*See* R. 112-38.)  The diagnosis and

x-rays are objective evidence and may be material and new.

However, whether the evidence is sufficient to warrant remand

involves additional inquiry as to the reasonable possibility of a

different outcome and whether Plaintiff had good cause for failing

to submit the evidence to the ALJ.

Plaintiff recognizes that she needs to show that "new evidence

raises a 'reasonable possibility' of reversal sufficient to

undermine confidence in the prior decision."  (Doc. 8-1 at 7

(quoting *Newhouse v. Heckler*, 753 F.2d 283, 287 (3d Cir. 1985)).)

Plaintiff states that she "was lacking in medical insurance and

therefore unable to obtain treatment earlier, and that the ALJ

expressed concern that the Plaintiff's subjective complaints were

not backed up by objective medical testing, these records were

---

[3]  The Court Transcript Index goes from page 1 to page 668.
(*See* Doc. 5-1 at 1-3.)  The quoted material is found in the record
at page 663.  (*See* R. 5-13 at 663.)

critical to an accurate determination of disability." (Doc. 10 at 4.) However, with this statement alone, Plaintiff does not show that evidence from the May 8, 2015, visit creates "a reasonable possibility that the new evidence would have changed the outcome of the Secretary's determination." *Szubak*, 745 F.2d at 833. While Plaintiff's lack of insurance no doubt impacted the extent of record evidence concerning her impairments, reference (without citation) to the ALJ's concern about the lack of objective medical testing does not indicate a "reasonable possibility" that the May 8th testing would have changed the ALJ's determination when he specifically recognized that April 3, 2015, x-rays showed "questionable increasing defect of the talar dome compared to her past imaging." (R. 103.) Thus, while May x-rays are confirmative (R. 665, 667), previous imaging had suggested deterioration (R. 655) which was recognized by ALJ Cutter (R. 103). Similarly, reports of recent deterioration and increasing pain over the six months preceding the May evaluation (*see* R. 663) do not support a reasonably possibility that the outcome would have changed in that six months does not satisfy the statutory longitudinal requirement. *See* 42 U.S.C. § 423(d)(1)(A).

As noted by Defendant, the relevant question in the "good cause" inquiry is whether Plaintiff could have submitted the evidence before the ALJ rendered his decision. (Doc. 9 at 23 (citing *Morales v. Colvin*, No. 13-229-J, 2015 WL 1507844, at *3

21

(W.D. Pa. Mar. 31, 2015); *Edwards v. Astrue*, 525 F. Supp. 2d 710, 712-13 (E.D. Pa. 2007)).) Here it appears Plaintiff's counsel faxed the records from May 8, 2015, to ALJ Cutter on May 28, 2015, the date he issued his decision. (Doc. 10-3; R. 107.) Although Plaintiff states the records should have been considered by the ALJ in determining her disability (Doc. 10 at 3), she presents no evidence that ALJ Cutter received them before he issued his decision. Clearly Plaintiff's counsel believed the evidence to be important and could have requested that the record be kept open pending receipt of the records from May 8, 2015. Importantly, no evidence suggests that Plaintiff's counsel sought to have the record remain open during the hearing or alerted the ALJ after the hearing that additional evidence would be forthcoming. As discussed above, Plaintiff's mere mention of a scheduled appointment at the hearing was not sufficient to alert the ALJ that Plaintiff's counsel's assurance that nothing needed to be added to the record after the hearing was not accurate. (*See* R. 115, 126-27.) In these circumstances, Plaintiff has not presented good cause for failing to present the evidence to ALJ Cutter before he issued his Decision. Therefore, the Court concludes Plaintiff has not satisfied her burden of showing that remand for consideration of new evidence is warranted.

## V. Conclusion

For the reasons discussed above, the Court concludes

Plaintiff's appeal is properly denied.  An appropriate Order is filed simultaneously with this Memorandum.

                                        S/Richard P. Conaboy
                                        RICHARD P. CONABOY
                                        United States District Judge

DATED: September 27, 2017